**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
RODERICK LAMAR SANFORD,        )
                               )
          Petitioner,          )
                               )
     v.                        )        1:18CR193-1
                               )        1:20CV539
UNITED STATES OF AMERICA,       )
                               )
          Respondent.          )
```

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This Court (per United States District Judge William L. Osteen, Jr.) previously entered a Judgment memorializing Petitioner's sentence, inter alia, to consecutive prison terms of 276 and 60 months, upon his guilty plea to Counts One and Three of the Indictment in this case, which charged him with conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and possession of firearms in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Docket Entry 146 at 1-2; see also Docket Entry 12 (Indictment); Docket Entry 50 (Factual Basis); Docket Entry 55 (Plea Agt.); Docket Entry 120 (Plea Hrg. Tr.); Docket Entry 156 (Sent'g Hrg. Tr., Vol. I); Docket Entry 157 (Sent'g Hrg. Tr., Vol. II).)[1] Petitioner appealed (see Docket Entry 150), but the United States Court of Appeals for the Fourth Circuit affirmed the Judgment, see United States v. Sanford, 802 F. App'x 792 (4th Cir.

_____

[1] Parenthetical citations refer to Petitioner's above-captioned criminal case.

2020), and Petitioner did not seek certiorari review (see Docket Entry 163, ¶ 9(g); Docket Entry 167, ¶ 9(g)). He did, however, timely file a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 163), with a supporting Memorandum (Docket Entry 164), and a materially unchanged Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Amended Section 2255 Motion") (Docket Entry 167), with an Amended Memorandum (Docket Entry 168),[2] alleging these three grounds for relief:

1) "ineffective assistance of counsel" (Docket Entry 167, ¶ 12(Ground One) (all-caps font omitted) ("Ground One"));

2) "actual innocent [sic] of the elements required to establish a valid conviction under §924(c)(1)(A)(i)" (id., ¶ 12(Ground Two) (all-caps font omitted) ("Ground Two")); and

3) "record underlying [Petitioner's] guilty plea was not sufficient to establish that he possessed a firearm in the furtherance of a drug crime" (id., ¶ 12(Ground Three) (all-caps font omitted) ("Ground Three")).

The United States responded (see Docket Entry 172 ("Response"); see also Docket Entry 172-1 (affidavit of

---

[2] The Amended Memorandum corrected a page mis-ordering error in the original Memorandum. (Compare Docket Entry 164 at 3-4, with Docket Entry 168 at 3-4.) Given the absence of any meaningful difference between Petitioner's original and amended Section 2255-related filings, this Recommendation henceforth will cite only to the Amended Section 2255 Motion and Amended Memorandum.

2

Petitioner's counsel)) and Petitioner replied (Docket Entry 174 ("Reply"); see also Docket Entry 174-1 (Petitioner's affidavit)).

For Ground One's "[s]upporting facts" (Docket Entry 167, ¶ 12(Ground One)), the Amended Section 2255 Motion directs the Court to the Amended Memorandum (see id.), which, in turn, "asserts that [Petitioner's] counsel . . . committed the following errors and omissions" (Docket Entry 168 at 3):

1) "fail[ing] to entere [sic] a motion to dismiss the insufficient indictment" (id. (all-caps font omitted));

2) "fail[ing] to object to [Petitioner's] offense level being wrongfully increased in violation of [the] Sixth Amendment" (id. at 4 (all-caps font omitted) (missing space added));

3) "advis[ing Petitioner] to enter a plea of guilty to the offense of §924(c)(1)(A)(i), when his conduct did not satisfy the elements of said offense" (id. at 5 (all-caps font omitted) (missing space added));

4) "fail[ing] to object to [Petitioner's] statutory directives [sic] being increased through the use of an improper drug aggregate and methodology" (id. at 6-7 (all-caps font omitted));

5) "fail[ing] to object to [Petitioner's] offense level being wrongfully increased under U.S.S.G. §2D1.1(b)(12)" (id. at 8 (all-caps font omitted));

6) "fail[ing] to object to [Petitioner's] offense level being wrongfully increased by two (2) levels under U.S.S.G.

3

[§] 2D1.1(b)(16)(B)" (id. at 9 (all-caps font omitted) (missing spaces added));

    7) "fail[ing] to object to [Petitioner's] offense level being increase [sic] by three (3) levels under [U.S.S.G.] §3B1.1(b)" (id. at 10 (all-caps font omitted) (missing space added)); and

    8) "fail[ing] to object to the two (2) level increase of [Petitioner's] offense level under [U.S.S.G.] §3C1.2" (id. at 11 (all-caps font omitted) (missing space corrected)).

    To prevail on Ground One, Petitioner must prove that his counsel's performance in connection with those matters fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687-96 (1984). Meeting that burden "is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also id. ("[T]he standard for judging counsel's representation is a most deferential one."); Strickland, 466 U.S. at 694 (defining prejudice as "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Moreover:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [range of competence demanded of attorneys in criminal cases].

4

_Tollett v. Henderson_, 411 U.S. 258, 267 (1973) (emphasis added); _see also id._ ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process."). A defendant pleads guilty _voluntarily_ when he possesses "aware[ness] of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . [, and received no] induce[ment] by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or . . . promises that are by their nature improper . . . (e.g. bribes)." _Brady v. United States_, 397 U.S. 742, 755 (1970) (internal quotation marks omitted). To make an _intelligent_ guilty plea, a defendant must enjoy "control of his mental faculties" and must know "the nature of the charge against him." _Id._ at 756. Here, the record forecloses any such attack on Petitioner's guilty plea.

In that regard, at the start of his plea hearing, Petitioner took an oath (_see_ Docket Entry 120 at 3; _see also id._ (memorializing explanation of oath's significance)), after which he gave his age as 38 (_see id._), attested to attending school to the "[e]leventh grade" (_id._), denied the influence of any impairing substance (_see id._ at 3-4), and affirmed his "ab[ility] to hear [Judge Osteen] and understand th[e] proceeding" (_id._ at 4). Additionally, Petitioner swore that he "review[ed] and underst[oo]d the [I]ndictment and the [P]lea [A]greement" (_id._ at 3), that he

5

"received a copy of the [I]ndictment and reviewed it with [his counsel]" (id. at 4), that he "underst[oo]d the charges against [him]" (id.), that he "fully discussed those charges and the case in general with [his] attorney" (id.), that they "discussed any possible defenses [he] might have to these charges" (id.; see also id. (documenting Petitioner's "understand[ing]" that discussion of defenses meant "talk[ing] to [his counsel] about everything [Petitioner] think[s] would be helpful to [him] in defending [him]self in this case")), and that he signed the Plea Agreement (see id. at 5). Petitioner also expressed "full[] satisf[action] with the services of [his] attorney and his [attorney's] counsel, representation, and advice[.]" (Id. at 4-5.)

Next, after Judge Osteen thoroughly summarized the Plea Agreement, including Petitioner's "agree[ment] to enter a voluntary plea of guilty to the offenses charged in Counts One and Three" (id. at 5), the reciprocal dismissal of "[a]ny remaining counts" (id.), a "recommend[ation ] for a reduction in his offense level pursuant to [U.S.S.G. §] 3E1.1(b) . . . if he otherwise qualifies" (id.), a "stipulat[ion] that the substance involved in Count One is a mixture and substance of heroin in a quantity of greater than 1 kilogram" (id.), "the Government's agreement not to file an information of prior conviction" (id. at 6), and Petitioner's reciprocal "waiv[er of] his appeal rights and his post-conviction rights . . . except [for] . . . [i]neffective assistance of

6

counsel, prosecutorial misconduct not known to him at the time of his guilty plea, a sentence in excess of a statutory maximum, and a sentence based on an unconstitutional factor" (id.), Petitioner agreed that Judge Osteen's "summary of the [P]lea [A]greement [was] the same as [Petitioner's] understanding of the terms of [the P]lea [Agreement]" (id.). Petitioner then denied "hav[ing] any questions about [the Plea Agreement]" (id.), verified that he "ha[d] enough time to review the [P]lea [A]greement and discuss it with [his counsel]" (id. at 6-7), reiterated that he "underst[oo]d all the terms of [the P]lea [A]greement" (id. at 7), and confirmed that "th[e P]lea [A]greement represent[ed] the entire agreement between [he] and the United States in this case" (id.).

Judge Osteen thereafter engaged Petitioner in the following colloquy about the Plea Agreement's drug quantity stipulation:

> THE COURT: . . . [T]here is a stipulation in your [P]lea [A]greement that the substance involved in Count One is a mixture and substance of heroin in a quantity of greater than 1 kilogram. The weight and type of substance involved in the offense of conviction is very significant for purposes of this criminal proceeding.
>
> First of all, that . . . quantity and type of substance will be used to establish the statutory penalties that will apply in this case. If you did not stipulate to that weight and quantity, the Government would be required to prove that to a jury beyond a reasonable doubt.
>
> Second, the weight and quantity is a significant factor in the guideline calculation in your case.
>
> And, third, it can be a significant factor in evaluating the sentencing factors under [18 U.S.C. §] 3553.

7

Do you understand all of that?

[Petitioner]: Yes, sir.

THE COURT: If I accept this [P]lea [A]greement, then at the time of sentencing I would not permit you or your attorney to argue that the substance involved in Count One was something other than heroin, nor would I permit you to argue that the substance was in a quantity less than 1 kilogram. In other words, this stipulation will set that quantity at 1 kilogram or more. Do you understand?

[Petitioner]: Yes, sir.

(Id. at 7-8.)

Petitioner subsequently disavowed "any threats or promises to [him] other than those contained in the [P]lea [A]greement in an effort to get [him] to plead guilty" (id. at 10), as well as "anyone in any way attempt[ing] to force [him] to plead guilty against [his] wishes" (id.). Judge Osteen further detailed the "statutory penalties that apply upon conviction of the offenses charged in Counts One and Three" (id. at 11), including, as to Count One, "[a] term of imprisonment of not less than ten years or more than life" (id.), and, as to Count Three, "[a] term of imprisonment of not less than five years" (id. at 12), which "must be imposed to run consecutively to the sentence imposed as to Count One" (id.; see also id. at 11-12 (memorializing Petitioner's confirmation of his "understand[ing of] those statutory penalties that apply as to Count One" and "as to Count Three"), 13 ("THE COURT: Do you understand all of the possible penalties and consequences of this plea of guilty? [Petitioner]: Yes, sir.")).

8

During the plea hearing, Judge Osteen additionally advised Petitioner as follows:

> You have the right to plead not guilty.
>
> You have the right to a trial by jury, which means you have the right to have your guilt or innocence determined by a jury.
>
> At any trial you are presumed innocent. The United States is required to prove your guilt of the crime charged beyond a reasonable doubt, which means the United States is required to prove each element of the crime beyond a reasonable doubt before you can be found guilty.

(Id. at 15; see also id. at 16-17 (documenting Petitioner's "understand[ing of] each of these rights" and his "understand[ing] that . . ., once [his] plea is accepted by this Court, there will be no trial, and [he] will have given up [his] right to a trial as well as the[] other rights associated with a trial").)

Finally, the colloquy concluded as follows:

> THE COURT:  . . . Count One charges a violation of Title 21, United States Code, Section 846. The elements of that offense, that is, the facts the United States would be required to prove beyond a reasonable doubt at any trial, include all of the following:
>
> One, that there was an agreement between two or more persons . . . to knowingly and intentionally distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a controlled substance.
>
> And, two, you knew of that conspiracy.
>
> And, three, you knowingly and voluntarily became a member of that conspiracy.
>
> Do you understand the elements of the offense charged in Count One?
>
> [Petitioner]:  Yes, sir.

Case 1:18-cr-00193-WO    Document 193    Filed 06/27/23    Page 9 of 35

THE COURT: Count Three charges a violation of Title 18, United States Code, Section 924(c)(1). The elements of that offense include all of the following:

. . . .

. . . [One, t]hat you committed a drug-trafficking crime as alleged in the [I]ndictment, that is, a conspiracy to distribute heroin, and possession with intent to distribute fentanyl.

And two, in furtherance of that crime, you knowingly possessed a firearm as described in the [I]ndictment.

Do you understand the elements of the offense charged in Count Three?

[Petitioner]: Yes, sir.

THE COURT: Do you understand that[,] by pleading guilty to these two offenses, you are admitting to the elements of the offenses as those facts are described in the [I]ndictment?

[Petitioner]: Yes, sir.

THE COURT: Do you have any questions before I call upon you to enter your plea in this case?

[Petitioner]: No, sir.

THE COURT: Then . . . how do you plead to the offense charged in Count One? Guilty or nor guilty?

[Petitioner]: Guilty.

THE COURT: And how do you plead to the offense charged in Count Three? Guilty or not guilty?

[Petitioner]: Guilty.

THE COURT: And are you pleading because you are, in fact, guilty?

[Petitioner]: Yes, sir.

THE COURT: Then it is the finding of this Court . . . that [Petitioner] is fully competent and capable of

entering an informed plea.  The Court further finds that
[Petitioner] is aware of the nature of the charges and
the consequences of his plea, and his plea of guilty is
a knowing and voluntary plea.

. . . .

THE COURT:  . . . You've reviewed the [F]actual [B]asis,
[Petitioner]?

[Petitioner]:  Yes, sir.

THE COURT:  Do you agree with those facts?

[Petitioner]:  Yes, sir.

THE COURT:  Then I will find in [Petitioner's] case that
his plea of guilty is supported by an independent basis
in fact containing each of the essential elements of the
offense[s].  His plea is therefore accepted, and [he] is
now adjudged guilty of the offenses charged in Counts One
and Three of the [I]ndictment.

(Id. at 17-19.)

Now, as then, Petitioner's foregoing, sworn admissions,
combined with Judge Osteen's related findings, conclusively
establish that Petitioner pleaded guilty intelligently, i.e., while
in "control of his mental faculties," Brady, 397 U.S. at 756, and
with knowledge of "the nature of the charge," id.  Those record
excerpts also undeniably demonstrate that he pleaded guilty
voluntarily, i.e., while "aware of the direct consequences," id. at
755, and free of any improper "induce[ments]," id.  Petitioner
therefore cannot obtain collateral relief from his conviction.  See
Tollett, 411 U.S. at 267 (allowing "defendant [who] has solemnly
admitted in open court that he is in fact guilty" to "only attack
the voluntary and intelligent character of the guilty plea").

11

Put another way, the above-quoted "findings made by [ J]udge [Osteen in] accepting [Petitioner's] plea, constitute a formidable barrier in [this] subsequent collateral proceeding[]." Blackledge v. Allison, 431 U.S. 63, 74 (1977).  Concomitantly, "[Petitioner's above-quoted] solemn declarations in open court affirming [his P]lea [A]greement carry a strong presumption of verity, because courts must be able to rely on [such] statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal brackets, citation, ellipsis, and quotation marks omitted).  "Thus, in the absence of extraordinary circumstances, . . . [the C]ourt should, without holding an evidentiary hearing, dismiss any [collateral claim] that necessarily relies on allegations that contradict [Petitioner's] sworn statements." Id. at 221-22.  Petitioner has proved no extraordinary circumstances undermining his knowing and voluntary guilty plea to Counts One and Three and thus any attack on those convictions via Ground One fails as a matter of law.[3]

_____

[3] Notably (as discussed in a prior Order entered by Judge Osteen), before sentencing, Petitioner "moved to withdraw his guilty plea" (Docket Entry 138 at 1), and "a hearing was held on th[at] motion" (id.).  "[Petitioner] testified at the hearing" (id.) and "also called as a witness his mother" (id.).  "During the [m]otion [h]earing, [Petitioner] testified that he [wa]s not guilty of the[] charges [in Counts One and Three]."  (Id. at 7.)  Judge Osteen, "having had the opportunity to observe [Petitioner] both at the [c]hange of [p]lea [h]earing and at the [m]otion [h]earing, [wa]s fully persuaded that [Petitioner's] responses at the [c]hange of [p]lea [h]earing were informed and truthful."  (Id. at 8.)  Judge Osteen "[wa]s further persuaded that [Petitioner's] belated
(continued...)

In the face of the foregoing record and authority, Ground One lists three critiques of Petitioner's counsel which could pertain to Petitioner's conviction(s) on Counts One and Three. (See Docket Entry 168 at 3 (complaining that "counsel failed to entere [sic] a motion to dismiss the insufficient indictment" (all-caps font omitted)), 5 (grousing that "[counsel] advised [Petitioner] to enter a plea of guilty to the offense of §924(c)(1)(A)(i), when his conduct did not satisfy the elements of said offense" (all-caps font omitted) (missing space added)), 6-7 (decrying "[counsel's] fail[ure] to object to [Petitioner's] statutory directives [sic] being increased through the use of an improper drug aggregate and

---

[3](...continued)
denial of guilt at the [m]otion [h]earing was false." (Id.; see also id. at 6 ("reject[ing Petitioner's] testimony [at motion hearing] as unreliable"), 8 ("[Petitioner's] testimony at the [m]otion [h]earing [wa]s internally inconsistent."), 9 ("[Petitioner's] testimony [wa]s inconsistent with his mother's testimony as well."), 11 ("[Petitioner's] testimony in no way establishes any credible claim of innocence to the offenses to which [he] pled guilty.").)  Moreover, in attempting to withdraw his guilty plea, "[Petitioner] d[id] not argue any irregularity in the Rule 11 colloquy, and th[e C]ourt f[ound] that the colloquy was properly conducted." (Id. at 12.)  Finally, "[t]h[e C]ourt f[ound] that [Petitioner] ha[d] not presented credible evidence to demonstrate he did not have close assistance of counsel. [Petitioner] also [did] not present[] any credible evidence to demonstrate that his plea of guilty was not knowing and voluntary." (Id. at 16; see also id. at 14 (deeming Petitioner's "testimony [] insufficient to establish ineffective assistance of counsel"), 19 ("In sum, the [C]ourt finds that [Petitioner's] guilty plea was knowing and voluntary, [he] has not credibly asserted his legal innocence, and [he] cannot establish ineffective assistance of counsel.").)  Petitioner appealed that Order denying his motion to withdraw his guilty plea, but the Fourth Circuit upheld Judge Osteen's ruling.  See Sanford, 802 F. App'x at 793-94.

methodology" (all-caps font omitted)).)  As to the first of those three ineffectiveness sub-claims, the Amended Memorandum contends:

> [Counsel's] performance fell below [a] reasonable objective standard, when he failed to submit a motion to dismiss the insufficient and defective indictment for the following reasons: (1) [t]he [I]ndictment wrongfully charged that [Petitioner] was a participant in a conspiracy when his actions or conduct did not constitute such an offense; (2) the [I]ndictment wrongfully charged [Petitioner] under [S]ection 924(c)(1)(A)(i) for being in possession of a firearm, during a drug trafficking crime, when his conduct did not satisfy the required elements to substain [sic] a valid charge and conviction under such offense; [and] (3) [t]he [I]ndictment wrongfully charged [Petitioner] for being a felon in possession of a firearm, however said [I]ndictment failed to give him adequate notice of said offense, the government failed to prove that he knowingly possessed said firearm[] and that he possessed said firearm knowing that he was a prohibited person to the grand jury, supported with the adequate and necessary state documents.
>
> . . . [I]t was [Petitioner's] counsel's duty and responsibility . . . to challenge the sufficiency of every allegation or charge being brought by the government. . . . [A]s a result of his counsel failing to challenging [sic] the sufficiency of the [I]ndictment, [Petitioner] was left to stand against offenses for which he was and is actual [sic] innocent.
>
> [Petitioner] avers that had counsel submitted a motin [sic] challenging the [I]ndictment the outcome would have been different, the said counts would have been dismissed or the [I]ndictment would have been dismissed in it's [sic] entirety.

(Id. at 3-4 (missing spaces added).)

Those contentions do not provide a basis for collateral relief, as Petitioner's "intelligent and voluntary guilty plea waive[d] arguments regarding defects in the [I]ndictment.  Because [Petitioner's] guilty plea was valid, he [] waived any challenge to

14

defects in the [I]ndictment." United States v. Newbold, 686 F. App'x 181, 188 (4th Cir. 2017) (internal citations omitted) (citing Tollett, 411 U.S. at 266). And Ground One's repackaging of indictment-based contentions as an ineffective assistance of counsel sub-claim does not change the outcome. See Tollett, 411 U.S. at 267 ("A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . ."); see also, e.g., Dunbar v. United States, Nos. 5:18CR21-T-27, 5:19CV657-T-27, 2020 WL 340619, at *3 (M.D. Fla. Jan. 21, 2020) (unpublished) ("[The petitioner's] complaints about his attorneys' failure to object to the indictment . . . are not about his decision to plead guilty and could not have undermined the knowing and voluntary nature of his plea. . . . [Those ineffectiveness claims] are therefore due to be summarily dismissed."); Gravely v. United States, Nos. 7:00CV692 & 741, 2001 WL 34806541, at *4 (W.D. Va. Sept. 6, 2001) (unpublished) ("[The petitioner] alleges that counsel rendered ineffective assistance for failing to object to the insufficient indictment. . . . [A]ll non-jurisdictional defects in an indictment are waived by a valid guilty plea. Accordingly, . . . [this ineffectiveness] claim [] is without merit." (internal citation omitted) (citing Tollett)).

Alternatively, Ground One's three, above-quoted objections to the Indictment all lack merit. As an initial matter, Petitioner

15

cannot show prejudice (as required by <u>Strickland</u>) as to the third proffered objection, regarding the felon-firearm charge in Count Four of the Indictment (<u>see</u> Docket Entry 12 at 4), given that the Court dismissed that charge (<u>see</u> Docket Entry 146 at 1). Petitioner's other two objections to the Indictment (which concern Counts One and Three) do not identify any defect in the language of the Indictment, but rather simply assert that Petitioner did not commit those two offenses. (<u>See</u> Docket Entry 168 at 3-4.) Such assertions would not have supported a motion to dismiss the Indictment (or, more precisely, Counts One and Three), because "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." <u>United States v. Critzer</u>, 951 F.2d 306, 307 (11th Cir. 1992); <u>accord, e.g.</u>, <u>United States v. Sholley-Gonzalez</u>, 996 F.3d 887, 893 (8th Cir. 2021); <u>United States v. Guerrier</u>, 669 F.3d 1, 4 (1st Cir. 2011); <u>United States v. Moore</u>, 563 F.3d 583, 586 (7th Cir. 2009); <u>United States v. Hewlett</u>, 467 F. Supp. 3d 347, 353 (E.D. Va. 2020); <u>United States v. Indivior Inc.</u>, 451 F. Supp. 3d 553, 558-59 (W.D. Va. 2020); <u>United States v. Jones</u>, 207 F. Supp. 3d 576, 578 (E.D.N.C. 2016); <u>see also</u> <u>United States v. Souder</u>, Nos. 1:08CR136-1 & 2, 1:08CR275-1 & 2, 2009 WL 88919, at *7 (M.D.N.C. Jan. 12, 2009) (unpublished) (discussing cases where federal courts have considered evidentiary proffers in relation to pretrial challenges to federal criminal charges).

As a result, "[Petitioner's] counsel was not constitutionally ineffective in failing to object [to the Indictment] . . . because it would have been futile for counsel to have done so . . . ." Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000). Turning to the second, conviction-connected, ineffectiveness sub-claim in Ground One, i.e., that Petitioner's counsel "advised [Petitioner] to enter a plea of guilty to the offense of §924(c)(1)(A)(i), when his conduct did not satisfy the elements of said offense" (Docket Entry 168 at 5 (all-caps font omitted) (missing spaces added)), Petitioner's knowing and voluntary guilty plea again dooms any collateral attack on this front. See Tollett, 411 U.S. at 267; see also, e.g., Johnson v. United States, Nos. 1:09CR13-11, 1:11CV45, 2014 WL 294631, at *3 (W.D.N.C. Jan. 27, 2014) (unpublished) ("[The p]etitioner first contends that his trial counsel was ineffective . . . [because] the government failed to adduce evidence at [a] pretrial procedure sufficient as a matter of law to charge and/or convict [the p]etitioner of conspiracy to possess and distribute cocaine base. . . . [A] knowing and voluntary guilty plea constitutes an admission of the material elements of the crime and waives non-jurisdictional errors, including the deprivation of constitutional rights which allegedly occurred before the entry of the guilty plea. . . . In sum, [this] ineffective assistance of counsel claim is without merit." (internal quotation marks and citations omitted) (citing Tollett)); Repass v. United States, No.

17

7:07CV395, 2007 WL 4119090, at *3 n.2 (W.D. Va. Nov. 16, 2007) (unpublished) ("[The petitioner's] claim that counsel should have informed the court that there was no factual basis for the court to accept [the petitioner's] guilty plea . . . fails. There was no need for counsel to make any arguments of defense as [the petitioner] chose to plead guilty. . . . [A] defendant who pleads guilty waives all claims relating to constitutional violations that occur before the entry of the plea. Therefore, [the petitioner's] allegations fail to support a claim of ineffective assistance." (internal citation omitted) (citing <u>Tollett</u>)).

Even if Petitioner's guilty plea did not bar relief on this ineffectiveness sub-claim, the facts set forth in the Factual Basis – the accuracy of which he conceded under oath (<u>see</u> Docket Entry 120 at 19) – refute his post hoc declaration that "his conduct did satisfy the elements of [Count Three]" (Docket Entry 168 at 5 (all-caps font omitted)) and thus preclude a finding that his counsel acted unreasonably by recommending a guilty plea to Count Three. (<u>See</u> Docket Entry 50 at 10-11 (recounting witness statement "that [Petitioner] delivered [] bags of [poor-quality heroin] to her on two occasions – January 15, 2018, and two to three days prior," that each "delivery took place at 1640 J & S Lane, Hillsborough, North Carolina," that "she had been to 1640 J & S Lane on several occasions over a several-week period," "that [Petitioner] used th[at] residence as a distribution location for heroin," "that,

18

during the weeks preceding [] January 16, 2018 . . ., she had seen three firearms at 1640 J & S Lane," that "she last saw [Petitioner] with a firearm the last week of December 2017," and that "she had seen [Petitioner] retrieve drugs from a safe located in his bedroom closet," as well as fact that, "[o]n January 29, 2018, [the same witness] turned over another plastic bag to [law enforcement]," which she "stated [Petitioner] provided . . . to her on January 28, 2018, at 1640 J & S Lane," and which, via "field test," "yielded a positive result for the presence of Fentanyl"), 14 ("On March 2, 2018, a search warrant was executed at 1640 J & S Lane – [Petitioner's] residence. . . . The search resulted in the seizure of a Glock 9 millimeter handgun, a Marlin .22 caliber rifle, a Mossberg .22 caliber rifle, and a Remington .22 caliber rifle. Officers also seized 42.61 grams of a mixture and substance containing a detectable amount of Fentanyl . . . ."), 17 (setting out co-conspirator's statement that he and Petitioner "had dealt heroin together since 2015," that he attended "meeting[s with Petitioner and another co-conspirator] at the J & S Lane residence to pick up quantities of heroin," that "he had seen [Petitioner] in possession of a firearm that [he] described as a 'Glock nine,'" and that "the largest quantity of heroin he had seen in [Petitioner's] possession was approximately 4 ounces").)[4]

---

[4] The above-quoted facts (to which Petitioner swore his assent) show that his possession of firearms and his possession of
(continued...)

19

Ground One's third (and final) sub-claim for ineffective assistance implicating his conviction(s) on Counts One and/or Three criticizes Petitioner's counsel for "fail[ing] to object to [Petitioner's] statutory directives [sic] being increased through the use of an improper drug aggregate and methodology." (Docket Entry 168 at 6-7 (all-caps font omitted).) Specifically, this sub-claim asserts that Petitioner's counsel should have objected to the Court's application of statutory penalties for Count One "based on [o]ne kilogram of heroin and not the 42 grams of fentanyl found at his home." (Id. at 7; see also id. at 8 (errantly suggesting that "[C]ount [T]wo" constituted his "offense of conviction").) Once more, Petitioner's guilty plea forecloses this sub-claim, as the record (detailed previously) conclusively demonstrates that he knowingly and voluntarily admitted his guilt to Count One's charge of "knowingly and intentionally [and] unlawfully conspir[ing] . . . [t]o knowingly intentionally, and unlawfully distribute a mixture and substance containing a detectable amount of heroin"

_____

[4](...continued)
drugs at his home on March 2, 2018, "were anything but unrelated," United States v. Moore, 769 F.3d 264, 270 (4th Cir. 2014). Rather, the record establishes that Petitioner possessed both firearms and drugs at his home on that date (just as he regularly had done for an extended period of time), as part and parcel of his ongoing use of his home as a hub for his conspiratorial, armed, drug trafficking activity; as such, "a reasonable fact finder could find beyond a reasonable doubt that the firearms were in the [home] for the purpose of protecting [Petitioner], his drugs, and his drug trafficking profits," id. Accordingly, "[i]n the words of the [Section 924(c)] statute, the firearms here were possessed 'in furtherance of' drug trafficking." Id.

(Docket Entry 12 at 1-2), with "the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, [being] 1 kilogram or more of heroin" (id. at 2). (See Docket Entry 120 at 3-4 (attesting to full understanding of Indictment and Plea Agreement), 5-6 (acknowledging that Plea Agreement provided for "voluntary plea of guilty to [] offense[] charged in Count[] One," as well as "stipulat[ion] that the substance involved in Count One is a mixture and substance of heroin in a quantity of greater than 1 kilogram"), 7-8 (documenting Petitioner's reiteration of his "understand[ing of] all the terms of [the P]lea [A]greement," including abandonment of right "to argue that the substance involved in Count One was something other than heroin . . . [or] a quantity less than 1 kilogram"), 11-12 (memorializing Petitioner's understanding that he faced statutory, mandatory minimum of 10 years in prison for Count One).)

In sum, all three of the sub-claims of ineffectiveness in Ground One which contest aspects of Petitioner's conviction(s) on Counts One and Three for conspiring to distribute one kilogram or more of heroin and for possessing firearms in furtherance of a drug trafficking crime, respectively, fail as a matter of law, because (as the Fourth Circuit held on direct appeal):

> In accepting [Petitioner's] guilty plea, th[e C]ourt conducted a thorough Fed. R. Crim. P. 11 colloquy and confirmed that [Petitioner] understood the nature of the charges and the statutory penalties he faced, that he was

satisfied with the representation of his attorney, that he was pleading guilty because he was, in fact, guilty, and that no one had forced or threatened him to enter a plea. [Petitioner] averred that he had read the [F]actual [B]asis filed by the Government in support of his guilty plea and that he agreed with the facts presented therein.

Sanford, 802 F. App'x at 793-94 (emphasis added); see also id. at 794 (affirming denial of Petitioner's motion to withdraw guilty plea to Counts One and Three).[5]

The remainder of Ground One consists of five sub-claims of ineffective assistance pertaining to the calculation of

---

[5] Furthermore, Petitioner has not "demonstrated any meaningful likelihood that [Ground One's above-discussed] allegations of error, if true, caused prejudice," Campbell v. United States, Nos. 1:11CR325, 1:12CV977, 2015 WL 12912384, at *2 (M.D.N.C. July 17, 2015) (unpublished) (Eagles, J.), because he has not "establish[ed] that there is a reasonable probability that but for counsel's allegedly deficient conduct[ Petitioner] would not have pled guilty but would have gone to trial," id.; see also United States v. Harris, 404 F. App'x 264, 267 (10th Cir. 2010) ("[The petitioner] offers nothing more than his own word that he would not have pleaded guilty but for counsel's actions, and conclusory allegations are insufficient to support an ineffective assistance of counsel claim."). Nor could Petitioner make the requisite showing of prejudice as to his conviction(s) on Counts One and Three, given (A) the strong evidence of his guilt, as documented in the Factual Basis (and accepted by Petitioner), and (B) the life imprisonment term he faced on Count One alone, "[i]f convicted at trial . . . [and therefore denied a] three-level deduction for acceptance of responsibility," Campbell, 2015 WL 12912384, at *3. Specifically, as to that latter point, the Court should note that absent a three-level decrease from the otherwise-determined offense level of 41 to an offense level of 38 (see Docket Entry 147 at 1) and with his criminal history category of II (see id.), Petitioner would have faced an advisory sentencing range of 360 months to life in prison on Count One, see U.S.S.G. Ch. 5, Pt. A (2018) (cell for offense level 41 and criminal history category II), under the applicable edition of the Sentencing Guidelines (see Docket Entry 72, ¶ 41 ("The 2018 Guidelines Manual . . . was used to determine [Petitioner's] offense level.").

Petitioner's offense level under the advisory Sentencing Guidelines. (See Docket Entry 168 at 3 (alleging that Petitioner's counsel should have "object[ed] to [Petitioner's] offense level being wrongfully increased in violation of [the] Sixth Amendment" (all-caps font omitted) (missing space added)), 8 (inveighing against "fail[ure of Petitioner's counsel] to object to [Petitioner's] offense level being wrongfully increased under U.S.S.G. §2D1.1(b)(12)" (all-caps font omitted)), 9 (accusing Petitioner's counsel of erroneously "fail[ing] to object to [Petitioner's] offense level being wrongfully increased by two (2) levels under U.S.S.G. [§] 2D1.1(b)(16)(B)" (all-caps font omitted) (missing spaces added)), 10 (assailing Petitioner's counsel for "fail[ure] to object to [Petitioner's] offense level being increase [sic] by three (3) levels under [U.S.S.G.] §3B1.1(b) . . . when there was [sic] insufficient facts to support such an increase" (all-caps font omitted) (missing space added)), 11 (insisting that Petitioner's counsel should have "object[ed] to the two (2) level increase of [Petitioner's] offense level under [U.S.S.G.] § 3C1.2" (all-caps font omitted) (missing space added)).)

Those Sentencing Guidelines-focused, ineffectiveness sub-claims all fall short. As an initial matter, Supreme Court and Fourth Circuit authority forecloses Petitioner's reliance on Ring v. Arizona, 536 U.S. 584 (2002), Apprendi v. New Jersey, 530 U.S. 466 (2000), Jones v. United States, 526 U.S. 227 (1999), and United

23

States v. Gaudin, 515 U.S. 506 (1995), to "aver[ (A)] that his Sixth Amendment right was infringed upon when the . . . [C]ourt combined unstipulated amounts of narcotics to set his [base] offense level [under U.S.S.G. § 2D1.1(a)(5) and (c)] at 3[2]" (Docket Entry 168 at 4),[6] and (B) "that his [base] offense level should have been set solely based off of the stipulated amount of narcotics listed in [the I]ndictment and [P]lea [A]greement" (id. at 4-5). In particular, although (building on the logic of Ring, Apprendi, Jones, and Gaudin) the Supreme Court struck down judicial fact-finding under the then-mandatory Sentencing Guidelines in United States v. Booker, 543 U.S. 220, 231-33 (2005), it preserved the practice going forward by rendering the Sentencing Guidelines advisory, see id. at 245.

Consistent with Booker, the Court (per Judge Osteen) treated the Sentencing Guidelines as advisory in this case. (See, e.g., Docket Entry 156 at 76 (inviting Petitioner's counsel to address "what constitutes a sentence that is sufficient but not greater than necessary, taking into consideration the advisory guideline calculation as well as the relevant [18 U.S.C. §] 3553(a) factors" (emphasis added)).) Given that fact and the fact that Petitioner "was sentenced below the statutory maximum[ of life imprisonment]

---

[6] Petitioner's Presentence Report ("PSR") set his base offense level ("BOL") for Count One at 34 based on accountability for 12.31 kilograms of heroin (see Docket Entry 72, ¶ 43), but "[t]he Court determined that [Petitioner] was accountable for 8.8 kilograms of heroin; thus, [his] BOL [wa]s 32" (Docket Entry 147 at 1).

on [ C]ount [One], his [Ring/Apprendi/Jones/Gaudin] argument is without merit." United States v. McKoy, 498 F. App'x 369, 371 (4th Cir. 2012); see also United States v. Manlapaz, 825 F. App'x 109, 115 (4th Cir. 2020) ("Because the Sentencing Guidelines are advisory, judicial factfinding at sentencing does not violate the Sixth Amendment."); United States v. Miller, 372 F. App'x 358, 358-59 (4th Cir. 2010) ("Though [the petitioner] asserts that facts supporting enhancements to a defendant's offense level [under the Sentencing Guidelines] must be admitted by the defendant or found by a jury beyond a reasonable doubt, the remedial portion of [] Booker explicitly rejected such an approach.").[7]

Ground One's final four sub-claims allege that Petitioner's counsel committed professional malpractice (A) "when he failed to object to [Petitioner's] offense level being wrongfully increased

---

[7] Like other petitioners before him, "Petitioner[ ] relie[d] on *United States v. Milam*, 443 F.3d 382 (4th Cir. 2006), to support his view that the Court erred by determining drug amounts under the Sentencing Guidelines," Holland v. United States, Nos. 1:10CR445, 1:13CV762, 2015 WL 5841619, at *2 n.4 (M.D.N.C. Oct. 7, 2015) (unpublished) (Beaty, S.J.). (See Docket Entry 168 at 5 (citing Milam).) However, "*Milam* 'involved a pre-*Booker* disposition and does not affect the Court's post-*Booker* calculation of Petitioner's advisory guideline range,'" Holland, 2015 WL 5841619, at *2 n.4 (internal brackets and ellipses omitted) (quoting United States v. Martin, 278 F. App'x 248, 252 (4th Cir. 2008)). Petitioner's Reply also invokes Alleyne v. United States, 570 U.S. 99 (2013), to support his above-discussed Sixth Amendment argument. (See Docket Entry 174 at 5.) "As *Alleyne* had no effect on [Sentencing] Guidelines enhancements, [Petitioner's invocation of that decision] is without merit." United States v. Holder, 549 F. App'x 214, 215 (4th Cir. 2014); accord, e.g., United States v. Cannon, 740 F. App'x 785, 792 (4th Cir. 2018); United States v. Winbush, 689 F. App'x 168, 169 (4th Cir. 2017).

25

under U.S.S.G. §2D1.1(b)(12)" (Docket Entry 168 at 8 (emphasis added) (all-caps font omitted)), (B) "when he failed to object to [Petitioner's] offense level being wrongfully increased by two (2) levels under U.S.S.G. [§] 2D1.1(b)(16)(B)" (id. at 9 (emphasis added) (all-caps font omitted) (missing spaces added)), (C) "when he failed to object to [Petitioner's] offense level being increase [sic] by three (3) levels under [U.S.S.G.] §3B1.1(b)" (id. at 9-10 (emphasis added) (all-caps font omitted) (missing space added)), and (D) "when [he] failed to object to the two (2) level increase of [Petitioner's] offense level under [U.S.S.G.] §3C1.2" (id. at 11 (emphasis added) (all-caps font omitted) (missing space added)). The Response by the United States showed, "[h]owever, [that Petitioner's] counsel raised objections to all of these [offense-level increases] and a hearing was conducted concerning these objections." (Docket Entry 172 at 9 (block-quoting Docket Entry 172-1, ¶ 10, in turn citing Docket Entry 132 at 2 (objecting to those offense level increases), and Docket Entry 156 at 3-72 (memorializing hearing held on said objections)).)

Petitioner's Reply attempts to escape the obvious frivolousness of Ground One's above-quoted allegations (falsely) charging his counsel with failing to file objections which his counsel in fact filed, by purporting to "clarify his argument in regards to . . . §2D1.1(b)(12); §2D1.1(b)(16)(B); §3B1.1(b);[ and] §3C1.2 and his counsel's performance . . . [as a] claim [] that his

26

counsel did not present an adequate challenge to each of these enhancements as was requested or advised, [but] just merely made an [sic] vague and general objection to each of these enhancements." (Docket Entry 174 at 7 (emphasis omitted).) That attempt entitles Petitioner to no relief, because "[he] has provided only conclusory allegations which meet neither the error nor the prejudice prong of the *Strickland* analysis," <u>Cano v. United States</u>, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished) (Dietrich, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. Dec. 29, 2009) (Beaty, C.J.). (<u>See</u> Docket Entry 168 at 8-11; Docket Entry 174 at 7-8; Docket Entry 174-1 at 1-2.)

For example, in regard to the offense level increase under Section 2D1.1(b)(12) for maintaining a premises for distributing drugs, the Amended Memorandum summarily declares that "[Petitioner] never . . . distributed any drugs from his home, and [] there was no audio or video to support said enhancement. The officers involved never conducted a controlled purchase from his home, but relied on blanket allegations from his disgruntled baby mother to validate such increase . . . ." (Docket Entry 168 at 8.) In fact, the PSR documented reports of Petitioner's distribution of drugs from his home not only from the mother of one of his children (<u>see</u> Docket Entry 72, ¶¶ 26, 27), but also from another conspirator (<u>see</u> <u>id.</u>, ¶ 34). Yet another conspirator likewise testified at Petitioner's sentencing hearing that Petitioner distributed drugs

from his home.  (See Docket Entry 156 at 28-29; see also id. at 32 ("Q  And you testified that there were several individuals in the house that were distributing heroin for [Petitioner]?  A  Yes, sir.").)  Given that evidence, which the Reply and accompanying affidavit do not even acknowledge, much less meaningfully contest (see Docket Entry 174 at 7-8; Docket Entry 174-1 at 1-2), Petitioner cannot show that his counsel could have done anything to forestall the Court's conclusion that Petitioner's residential "premises were used or were maintained for the purpose of distributing a controlled substance" (Docket Entry 156 at 62).

The Amended Memorandum similarly dismisses the offense level increase under Section 2D1.1(b)(16)(B) for distribution of drugs to a pregnant woman as supported by "no facts other than the allegations of his disgruntled baby mother" (Docket Entry 168 at 9), but sentencing hearing testimony from two other witnesses (credited by the Court and still unrebutted by Petitioner) substantiated that increase (see Docket Entry 156 at 6-11, 23-24; see also id. at 62 ("With respect to . . . the adjustment for distribution to an individual [Petitioner] knew was pregnant, I find that that is properly applied.  The evidence clearly establishes that [Petitioner] was the father.  He knew that [the woman in question] was pregnant at that particular time and that he made deliveries through [a conspirator] to [her].") ; Docket Entry 174 at 7-8 (offering only bald assertion that Petitioner's counsel

"fail[ed] to make adequate and sufficient objection to each of the allege [sic] enhancements as was displayed in [the Amended M]emorandum"); Docket Entry 174-1 at 1 (same)). Even more damningly, when confronted about this issue during his sentencing hearing allocution, Petitioner <u>admitted he had knowingly supplied drugs to the woman carrying his child</u>. (<u>See</u> Docket Entry 156 at 82-84 ("THE COURT: . . . So when you were delivering heroin to [the mother of your child] while she was pregnant with [that child], who were you taking care of then? [Petitioner]: Well, Your Honor, they failed to mention that [she] was going to a methadone clinic . . . . THE COURT: . . . I'm talking about what you did. So when you delivered heroin to her, while she was pregnant with [your child], such that [the child] apparently was born addicted to heroin, who were you taking care of then? . . . You knew the cost of abusing controlled substances. You use them yourself. You saw what they did to your girlfriend. You saw what . . . those substances did to your child, and yet you continued on. [Petitioner]: Your Honor, I do accept responsibility, Your Honor, for that, Your Honor. You know, I just didn't know what to do at the time because I felt like that I didn't want her searching or reaching outside, you know, . . . because I knew that she wanted it and she was going to get it by any means, you know.").)

In equally undeveloped and unfounded opposition to the three-level aggravating role adjustment under Section 3B1.1(b), the

29

Amended Memorandum states "that the PSR/Government only listed individuals and conduct that displayed what is known as Buyer Seller relationships." (Docket Entry 168 at 10.) That bald statement, however, simply does not square with the record, as Judge Osteen explained in overruling Petitioner's objection (which his counsel had dutifully, if ill-advisedly, raised at Petitioner's behest). (<u>See</u> Docket Entry 156 at 63 ("I think this evidence would likely support a higher adjustment than organizer or leader of this conspiracy. [Petitioner] directed others. [He], as is reflected in the [PSR], as well as the testimony given [at the sentencing hearing], controlled the activity of others. That testimony . . . is very distressing in terms of control and abuse of others. That appears throughout the [PSR]. . . . I think the plus three is very generous and favorable to [Petitioner] in terms of his leadership of this particular conspiracy . . . [as he] receiv[ed] orders from customers[ and] direct[ed] activities of various individuals." (alluding to Docket Entry 72, ¶¶ 5-7, 10, 13, 25, 35, and Docket Entry 156 at 19-30); <u>see also</u> Docket Entry 174 at 7-8 (failing to discuss record evidence supporting upward adjustment under Section 3B1.1(b)); Docket Entry 174-1 at 1-2 (same).)

Lastly (as concerns Ground One), the Amended Memorandum makes the conclusory "conten[tion] that the facts that were tendered by the PSR/Government [to support the upward adjustment for reckless endangerment during flight under Section 3C1.2] did not accurately

30

reflect [Petitioner's] actions or the incident at all." (Docket
Entry 168 at 11 (referring to Docket Entry 72, ¶¶ 12, 13, 39, 48).)
According to the Amended Memorandum, during the incident which gave
rise to the Section 3C1.2 adjustment:

> [Petitioner] was a passenger of a vehicle, when the
> driver pulled into another individual's driveway[.
> L]ocal officers came out of the home and told the driver
> not to move, [but] the driver out of fear and on his own
> behalf backed out of the driveway and attempted to flee[.
> T]here was [sic] no officers behind the vehicle, there
> was [sic] no officers in the front of the vehicle, [and]
> no officer had to jump out of the way of the vehicle[.
> N]on [sic] of these elements existed, so therefore the
> increase under [Section] 3C1.2 does not exist.

(Id.) Yet again, the record (as recounted by Judge Osteen) refutes
Petitioner's unsupported account and defeats his effort to blame
his counsel for imposition of the adjustment under Section 3C1.2:

> After hearing [the evidence], . . . I don't have any
> doubt whatsoever with respect to the facts as relate[d]
> in paragraph[s] 12 [and 13] of the [PSR], . . . with
> respect to fleeing law enforcement and . . . [the driver]
> claiming that he acted at the direction of [Petitioner].
> As the [PSR] notes, "During the apprehension of [the
> driver] and [Petitioner], [] investigators noticed a
> beige powdery substance on the exterior passenger['s]
> side of the vehicle[. Specifically, the beige substance
> was found] along the window . . . [It was also found on]
> the interior door handle o[n] the passenger['s] side,
> [and on Petitioner's] pants and under [one of] his
> fingernails."
>
> That appears to have ultimately turned out to be heroin
> residue. So the motivation to flee law enforcement
> appears to have been [Petitioner's] intention to destroy
> evidence before being caught with that evidence. So I
> credit [the driver's] statement as presented in the
> [PSR]. I don't find any reason to doubt those
> statements. I will, therefore, find that the plus two
> [under Section 3C1.2] is properly applied.

(Docket Entry 156 at 63-64 (quoting Docket Entry 72, ¶ 12 (stray comma and extra space omitted)); see also Docket Entry 72, ¶¶ 12 ("On May 7, 2015, investigators . . . executed a search at the residence of [an individual], who was suspected of distributing heroin. . . . After completing the search of the residence, investigators . . . stepped outside. While outside, investigators noticed a [vehicle] pulling into the driveway. . . . [T]he front seat passenger was [Petitioner]. Investigators began to approach the vehicle, but [the driver] placed the vehicle in reverse and began to back the vehicle up. Investigators shouted at [the driver] to stop . . . . Several investigators stepped in front of the vehicle's path in an attempt to get the vehicle to stop. However, [the driver] accelerated, which required the investigators to jump out of the way in order to avoid being hit. A vehicle chase ensued and[,] after a couple of attempts, investigators were able to stop the vehicle and apprehend the occupants."), 13 ("Immediately after his arrest, [the driver] waived his *Miranda* rights and agreed to give a statement to investigators. He advised officers that he had given [Petitioner] a ride in order for [Petitioner] to sell heroin to [the resident of the house where the chase began]. According to [the driver], [Petitioner] told [the driver] to flee, keep driving, and not pull over. [The driver] stated [Petitioner] ripped open the bag of heroin he was going to sell and dumped it out the window.").)

For all of the foregoing reasons, Ground One fails as a matter of law. The Court likewise should deny relief on Ground Two – which asserts a claim for Petitioner's "actual innocen[ce] of the elements required to establish a valid conviction under §924(c)(1)(A)(i)" (Docket Entry 167, ¶ 12(Ground Two)) – because, "in *Rouse v. Lee*, 339 F.3d 238, 255 (4th Cir. 2003), th[e Fourth Circuit] noted that 'claims of actual innocence are not grounds for habeas relief even in a capital case.'" Buckner v. Polk, 453 F.3d 195, 199 (4th Cir. 2006); see also, e.g., Curtis v. Virginia, No. 7:20CV414, 2021 WL 4807627, at *10 (W.D. Va. Oct. 14, 2021) (unpublished) ("[T]here is no recognized freestanding federal claim of actual innocence. . . . Federal habeas proceedings are not intended to be a forum for defendants to relitigate guilt or innocence . . . ."); Byrd v. Millis, No. 18CV332, 2019 WL 4723374, at *5 (M.D.N.C. Aug. 30, 2019) (unpublished) (Peake, M.J.) ("[The p]etitioner's fourth claim for relief should be denied to the extent that he attempts to raise actual innocence as a standalone claim."), recommendation adopted, 2019 WL 4723240 (M.D.N.C. Sept. 26, 2019) (unpublished) (Osteen, J.), appeal dismissed, 794 F. App'x 322 (4th Cir. 2020); Sanford v. Clarke, No. 18CV303, 2019 WL 472256, at *9 (E.D. Va. Feb. 6, 2019) (unpublished) ("Actual innocence is not a freestanding claim in habeas corpus proceedings. Therefore, to the extent that [the petitioner] intends Claim 4 to be such a freestanding claim, it is not cognizable or reviewable on

33

the merits." (internal citations omitted)), <u>appeal dismissed</u>, 778 F. App'x 269 (4th Cir. 2019).

Alternatively, "if free-standing actual innocence claims were cognizable on federal habeas review, the threshold showing for such an assumed right would necessarily be extraordinarily high," <u>Buckner</u>, 453 F.3d at 199 (internal quotation marks omitted), and Petitioner could not clear any such threshold, as "he point[ed] only to evidence existing and available at the time of his [plea]," <u>Byrd</u>, 2019 WL 4723374, at *6; <u>see also</u> <u>id.</u> ("This is not an 'actual innocence' argument within the meaning of that term[] as used in the case[-law] . . . ."). (<u>See</u> Docket Entry 168 at 12 (stating that "[s]everal firearms were found in [Petitioner's] home, [and] 42 grams of fentanyl was located in a different area of the home," but "there exist[ed] no evidence that the allege [sic] firearm [sic] discovered at [his] home was there for the protection of the drugs found there"); <u>see also</u> Docket Entry 174 at 8 (referencing no evidence in discussing Ground Two); Docket Entry 174-1 at 2 (averring that Petitioner "expressed to counsel that [Petitioner] did not possess a firearm in the furtherance of a drug trafficking crime," without offering any evidence showing actual innocence).)[8]

_____

[8] The Reply asserts "that if the §922(g)(1) offense was not charged correctly in the [I]ndictment then [ P]etitioner is actually innocent of the §924(c)(1)(A)(i) [offense]" (Docket Entry 174 at 4), but the Reply cites no authority for this illogical assertion (<u>see</u> <u>id.</u>) and courts consistently have dispatched claims of that sort, <u>see, e.g.</u>, <u>Givens v. Streeval</u>, No. 7:21CV21, 2021 WL
(continued...)

Moreover, as discussed above (in and adjacent to Footnote 4) in connection with Ground One's ineffectiveness sub-claim for failure of Petitioner's counsel to move for dismissal of Count Three, the evidence summarized in the Factual Basis (which, as documented previously, Petitioner endorsed under oath) fully supports his conviction under Section 924(c)(1)(A)(i). That circumstance also requires rejection of Ground Three's related claim that "[the] record underlying Petitioner's guilty plea was not sufficient to establish that he possessed a firearm in the furtherance of a drug crime" (Docket Entry 167, ¶ 12(Ground Three)).

**IT IS THEREFORE RECOMMENDED** that the Section 2255 Motion (Docket Entry 163) and Amended Section 2255 Motion (Docket Entry 167) be denied, without issuance of a certificate of appealability.

/s/ L. Patrick Auld<br>
**L. Patrick Auld**<br>
**United States Magistrate Judge**

June 27, 2023

---

[8](...continued)
5856147, at *3 (W.D. Va. Dec. 9, 2021) (unpublished); <u>Perkins v. Dobbs</u>, No. 2:20CV3491, 2021 WL 1725100, at *5 (D.S.C. Mar. 26, 2021) (unpublished), <u>recommendation adopted</u>, 2021 WL 1723513 (D.S.C. Apr. 30, 2021) (unpublished).